**DINERS CLUB, INC., Appellant,**

v.

**A. J. BUMB, Trustee of Dashew Business Machines, Inc., Appellee.**

**No. 22911.**

United States Court of Appeals
Ninth Circuit.

Jan. 13, 1970.

---

Martin Gendel (argued), of Gendel, Raskoff, Shapiro, & Quittner, Los Angeles, Cal., for appellant.

Ronald E. Gordon (argued), of Buchalter, Nemer, Fields.. & Savitch, Hubert F. Laugharn, Los Angeles, Cal., for appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and PLUMMER, District Judge.*

WRIGHT, Circuit Judge.

Appellee was appointed reorganization Trustee of Dashew Business Machines, Inc., pursuant to a petition filed August 16, 1965, in the District Court for the Central District of California. From that time until January, 1968, he carried on the debtor's business, which consists of the manufacture and embossing of plastic credit cards.

On January 10, 1967, appellant Diners Club, Inc., entered into a written contract with the Trustee for the production and sale to appellant of 1,500,000 cards. The contract contained elaborate provisions designed to prevent theft of the blank credit cards and misuse of the secret name and number list of Diners Club members. On November 17, 1967, Diners brought suit against the Trustee in the Superior Court of the State of California for the County of Los Angeles. It was alleged that the Trustee had breached the contract by negligently employing an untrustworthy employee, that 3,000 false credit cards had been put in circulation, and that Diners' contracts bound it to reimburse merchants for unauthorized charges made on the false cards. Resulting damages to Diners are now said to be in excess of $600,000.

Upon learning of Diners' suit, the Trustee sought an order from the reorganization court restraining any further state proceedings, and ordering Diners to file its claims in the reoganization court. A temporary order was granted November 22, 1967, and was made permanent March 11, 1968, after hearings before the Special Master and before Judge Curtis, sitting in reorganization. The latter found that Diners' state court suit would "unduly impede and interfere with the reorganization proceeding," and that Diners' claim could be adjudicated in the reorganization court "without any inconvenience or prejudice to Diners'

---

* The Honorable Raymond E. Plummer, United States District Judge for the District of Alaska, sitting by designation.

rights to a fair trial." From this order Diners takes an appeal here. Bankruptcy Act §§ 24, 121, 11 U.S.C. §§ 47, 521.

Diners asserts: (1) that the judge of the reorganization court below lacked jurisdiction to enter the order appealed from; and (2) that in any event the order was an abuse of discretion on the facts of this case. For the reasons which follow, we reverse.

## I.

The judge below found that Diners' suit would interfere with the administration of the reorganization debtor's estate. If that finding was not clearly erroneous, we think it clear that there was jurisdiction to issue the order appealed from.

Upon the filing of the petition, all property in the possession of the debtor passed into the custody of the reorganization court, and became subject to its authority and control. In the exercise of its jurisdiction over the debtor's property, the court had power to issue injunctions and all other writs necessary to protect the estate from interference, and to ensure its orderly administration. Continental Illinois Nat'l Bank & Trust Co. v. Chicago, R. I. & P. Ry., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935); Ex parte Baldwin, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934).

This ancillary jurisdiction of the reorganization court flows not only from express provisions of statute, Bankruptcy Act §§ 2(a) (15), 114–16, 11 U.S. C. §§ 11(a) (15), 514–16; All Writs Act, 28 U.S.C. § 1651, but from the inherent power of a court of equity to protect its control of a res in its custody. Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629 (1904); In re Tyler, 149 U.S. 164, 13 S.Ct. 785, 37 L.Ed. 689 (1893). It extends to the stay of proceedings in other courts, Bankruptcy Act § 116(4), 11 U.S.C. § 516(4), whenever such stays are necessary to conserve the assets of the estate, Steelman v. All Continent Corp., 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937); In re Lustron Corp., 184 F.2d 789 (7th Cir. 1950), or to prevent interference with the orderly rehabilitation of the debtor corporation. First Nat'l Bank in Houston v. Lake, 199 F.2d 524 (4th Cir. 1952); In re Standard Gas & Electric Co., 139 F.2d 149 (3d Cir. 1943). It is not limited by the federal anti-injunction act, 28 U.S.C. § 2283, see Toucey v. New York Life Ins. Co., 314 U.S. 118, 132–133, 62 S.Ct. 139, 86 L.Ed. 100 (1941), but may be exercised in the sound discretion of the reorganization judge. Foust v. Munson S.S. Lines, 299 U.S. 77, 57 S.Ct. 90, 81 L.Ed. 49 (1936); Mack v. Pacific S.S. Lines, 94 F.2d 95 (9th Cir. 1938).

Appellant does not contest these normal principles of reorganization jurisdiction. But he argues that they are overridden by the specific provisions of 28 U.S.C. § 959(a), which is said to give him an absolute right to bring his suit, and one which could not be interfered with by injunction. That section provides:

> Trustees, receivers, or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as the same shall be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

If the first sentence of the statute stood alone, we might be persuaded, since appellant's suit clearly was in respect of the Trustee's transactions in carrying on the debtor's business. Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968); Thompson v. Texas Mexican Ry., 328 U.S. 134, 138, 66 S.Ct. 937, 90 L.Ed. 1132 (1946). But the first sentence's broad grant of permission to sue is limited by the second, which makes suits subject to the general equity power of the appointing court. We are of opinion that this proviso, considered in the light of the legislative history of § 959(a), is sufficient to refute appellant's contention.

What is now § 959(a) was originally enacted in response to the Supreme

Court's decision in Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881). Act of March 3, 1887, ch. 373, § 3, 24 Stat. 554. Barton, injured in a railroad accident, brought suit for damages in the District of Columbia against a receiver who was operating the company pursuant to an order of the Virginia state courts. The Supreme Court held that a plea to the jurisdiction of the court in the District of Columbia was properly sustained, since a receiver might be sued in another court only by leave of the court appointing him.

Mr. Justice Miller, in dissent, argued that the majority opinion had failed to take into account the separation of law and equity. He conceded the Chancellor's power to prevent, by injunction, a plaintiff from "improperly interfering with the functions of the receiver," but maintained that the doctrine did not require other courts to refuse to hear actions at law absent prior leave of the equity court. "Whatever courts of equity may have done to protect their receivers, or the fund in their hands, it is no part of the duty of courts of law to deny to suitors properly before them the trial of their rights, which justice requires and the Constitution and the law guarantee." 104 U.S. at 140–141, 26 L.Ed. 672.[1]

Against this background, we think it clear that the purpose of § 959(a) was to enact Mr. Justice Miller's dissent into law. McGreavey v. Straw, 90 N.H. 130, 5 A.2d 270, 276 (1939). The first sentence of the statute overturned Barton v. Barbour by permitting suits at law without prior leave of the appointing court. But the second sentence, by making such suits subject to the "general equity power" of the appointing court, preserved for the Chancellor the jurisdiction Mr.

Justice Miller had conceded was his. If a plaintiff was at liberty to sue the receiver in any competent court without prior leave, so was the appointing court at liberty to use its injunctive powers to protect the receiver, or to guard the property in its custody.

Early cases interpreting § 959(a) generally followed Mr. Justice Miller's approach. Prior consent of the receivership court was held unnecessary to suits against the receiver with respect to the carrying on of the debtor's business, McNulta v. Lochridge, 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796 (1891); Texas & P. Ry. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829 (1892), and judgments entered in such suits were made conclusive against the receiver as to the amount and validity of the claim. St. Louis S.W. Ry. v. Holbrook, 73 F. 112, 19 CCA 385 (5th Cir. 1896); Willcox v. Jones, 177 F. 870, 101 CCA 84 (4th Cir. 1910). But in accordance with the express proviso of the statute, the general equity power of the appointing court remained unimpaired, and it might exercise its jurisdiction as needed, whether to manage the property in its custody, In re Tyler, 149 U.S. 164, 182, 13 S.Ct. 785, 37 L.Ed. 689 (1893); Dillingham v. Hawk, 60 F. 494, 9 CCA 101 (5th Cir. 1894), or to protect the receiver, Stateler v. California Nat'l Bank, 77 F. 43, 54 (C.C.N.D. Cal.1896); cf. 34 Cyc. 416–417 (1910).

It is true that later cases have put less emphasis on the second sentence of § 959(a). But the statute has repeatedly been held to present no obstacle to a court of equity in the exercise of its inherent power to protect its jurisdiction in respect of property of which it has taken possession. Field v. Kansas City Ref. Co., 296 F. 800 (8th Cir. 1924); Buck-

---

1. Mr. Justice Miller went on to quote from Kinney v. Crocker, 18 Wis. 74:

"But in all these cases it is not a question of jurisdiction in the courts of law, but only a question whether equity will exercise its own acknowledged jurisdiction of restraining suits at law under such circumstances and itself dispose of the matter involved. It follows that although a plaintiff in

such case, desiring to prosecute a legal claim for damages against a receiver, might, in order to relieve himself from the liability to have his proceeding arrested by an exercise of its equitable jurisdiction, very properly obtain leave to prosecute; yet his failure to do so is no bar to the jurisdiction of the court of law, and no defence to an otherwise legal action in the trial."

hannon & N. R.R. v. Davis, 135 F. 707, 68 CCA 345 (4th Cir. 1905); Woodbury v. Pickering Lumber Co., 17 F.Supp. 575 (W.D.Mo.1936); Republic Supply Co. v. Del Rey Oil & Ref. Co., 50 F.2d 639 (S.D.Cal.1931). Since courts of reorganization are successors to courts of equity under the old federal receivership practice, Bankruptcy Act § 115, 11 U.S.C. § 515, and exercise powers inherently equitable in nature, Continental Illinois Nat'l Bank & Trust Co. v. Chicago, R. I. & P. Ry., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935), the provisions of § 959(a) can present no greater obstacle to a court of reorganization in the aid of its Chapter X jurisdiction than to a former court of equity in the aid of its receivership jurisdiction. Ex parte Baldwin, 291 U.S. 610, 617–618, 54 S.Ct. 551, 78 L.Ed. 1020 (1934); Chicago, R. I. & P. Ry. v. City of Owatonna, 120 F.2d 226 (8th Cir. 1941).[2]

So far appellant seems willing to go. He concedes that the first sentence of § 959(a) cannot be taken literally, and that an exception for a court of equity acting in the aid of its jurisdiction is rooted in the case law. But he urges that the exception is narrow, and applies only when the state court suit involves a "claim directed against the *res* itself." We think this argument fallacious.

First, it overlooks cases where injunctions have issued, not simply to forestall a claim against the *res* by protecting the trustee's possession of the property in the custody of the court or his title thereto, but to prevent interference with the orderly administration of the estate. American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., 10 F. Supp. 512 (S.D.N.Y.), aff'd 76 F.2d 1002 (2d Cir. 1935); Dickinson v. Willis, 239 F. 171 (S.D.Iowa 1916); Stateler v. California Nat'l Bank, *supra*; 7 J. Moore, Federal Practice ¶ 66.07[2] (2d Ed. 1968). Only one case supports appellant, In re James Butler Grocery Co., 12 F.Supp. 851 (E.D.N.Y.1935), and that case rested entirely on the dictum in Vass v. Conron Bros. Co., 59 F.2d 969 (2d Cir. 1932), based in its turn on what we think was a faulty reading of the legislative history of § 959(a).

More important, the burden placed on the reorganization process by a suit cannot be determined simply by inquiry into whether it is directed at the *res*. Some suits affecting the *res* will place only slight burdens on the reorganization court. There may be good reasons for permitting them to continue in the state forum. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); Ex parte Baldwin, 291 U.S. 610, 619, 54 S.Ct. 551, 78 L. Ed. 1020 (1934). Other suits, even though only money damages are demanded, could conceivably so "embarrass administration" of the debtor corporation, Steelman v. All Continent Corp., 301 U.S. 278, 289, 57 S.Ct. 705, 81 L.Ed. 1085 (1937), as to make it proper that they be stayed.[3] In each situation the informed discretion of the judge of the

2. Our construction of § 959(a) renders it unnecessary to decide whether, on the assumption that an old federal receivership court had no power to stay a suit within the purview of the statute, the addition of the word "trustee" to § 116(4) of the Bankruptcy Act in 1938 conferred jurisdiction to do so on the judge of reorganization court. *Compare* 6 Collier on Bankruptcy ¶ 3.31[2], at 648 (14th Ed. 1969) *with* Gerdes, "Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act," 52 Harv.L.Rev. 1, 21–22 & n. 18 (1938).

3. Appellant suggests that Thompson v. Texas Mexican Ry., 328 U.S. 134, 140–141, 66 S.Ct. 937, 942, 90 L.Ed. 1132 (1946), lays down the flat rule that a suit for money due under a contract cannot embarass the administration of the estate, and it is true that the opinion contains broad language. But we think the language must be read in light of the Court's comment that the exclusive jurisdiction of the reorganization court "was a barrier to any action by any other court which would * * * interfere in any way with [the trustee's] operation of the business," and that the case held only that the particular suit involved there did not interfere with the trustee's operation of the business.

reorganization court remains a sounder guide than the mechanical test of whether the suit is directed at the *res*.

If appellant is correct, a judge charged with reorganizing a supermarket chain would have power to stay the replevin of a shopping cart, but not to require the consolidation of a burdensome and repetitious series of anti-trust claims. We cannot believe Congress intended a result so productive of delays and protracted litigation. We prefer to follow the reasoning of the commentators. 6 Collier on Bankruptcy ¶ 3.31[2], at 650 (14th Ed. 1969). We believe that in the exercise of a sound discretion, the judge of the reorganization court has the power in a proper case to enjoin the continuation of a suit in another court—even a suit within the purview of the first sentence of § 959(a).

### II.

We are not persuaded to abandon this conclusion by appellant's citation of cases where a blanket injunction, issued at the time of appointment of a receiver or trustee and staying all suits against the debtor or his property, has been read so as not to bar a suit permitted by the first sentence of § 959(a). Thompson v. Texas Mexican Ry., 328 U.S. 134, 138, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); Valdes v. Feliciano, 267 F.2d 91 (1st Cir. 1959); Kennison v. Philadelphia & Reading Coal & Iron Co., 38 F.Supp. 980 (D. Minn.1940); Anderson v. Scandrett, 19 F.Supp. 681 (D.Minn.1937); Van Kirk v. Superior Court, 144 Cal.App.2d 66, 300 P.2d 706 (1956).

Each of these cases rests upon a construction of the terms of the appointing court's order: their holding is not that the first sentence of § 959(a) overrides the appointing court's power to grant injunctive relief, but that the injunction actually granted, being aimed at preservation of the debtor's property and orderly administration of the estate, did not prevent the suit whose propriety was at issue. Since such holdings imply that the blanket injunction *will* operate according to its terms to bar a suit that interfers with the administration of the estate by the receiver or trustee, Wheeler v. Inland Gas Corp., 307 Ky. 459, 211 S.W.2d 415 (1948), they cannot stand for the proposition that injunctive relief, in a proper case, is beyond the jurisdiction of the appointing court.

█ In any event, a blanket injunction issued automatically when the receiver or trustee is appointed is significantly different from an injunction against a particular suit, issued after an independent examination by the reorganization judge. The former involves no exercise of discretion with regard to any specific suit and may properly be regarded as a simple incident of the appointment of the receiver or trustee. Hence it is entitled to no greater weight in subsequent proceedings than the fact of the appointment itself.[4]

The same cannot be said of an injunction issued after the bringing of a suit, and based upon a determination that such a suit would significantly interfere with the administration of the estate. The latter represents an exercise of the court's equitable jurisdiction that is not simply ancillary to the appointment of the receiver or trustee, but necessary, in the sound discretion of the court, for the protection and achievement of the goals for which the receivership or reorganization proceeding was instituted.

### III.

█ What we have said disposes of the contention that the court below was without jurisdiction to enter the injunction against appellant's state court suit. It remains to consider whether the injunction, on the facts of this case, was an abuse of discretion.

We need not decide whether the scope of the discretion of the judge of the reorganization court is especially narrow when there is question of enjoining a suit permitted by the first sentence of § 959(a). *See* 6 Collier on Bankruptcy

---

4. Cf. In re Murel Holding Corp., 75 F.2d 941, 943 (2d Cir. 1935) ("* * * a stay should never be the automatic result of the petition itself").

¶ 3.31[2], at 650 (14th Ed. 1969). For, regardless of the effect of § 959(a), there is a strong policy against enjoining suits in other courts except upon a satisfactory showing that prosecution of the action would embarrass the administration of the debtor's estate. Foust v. Munson S.S. Lines, 299 U.S. 77, 84, 57 S.Ct. 90, 81 L.Ed. 49 (1936); Thompson v. Texas Mexican Ry., 328 U.S. 134, 140–141, 66 S.Ct. 937, 90 L.Ed. 1132 (1946). No such showing has been made here.

The record shows that when Diners brought its state court suit on November 17, 1967, there was pending the Trustee's Plan of Reorganization for Dashew, which had been filed March 31, 1967. This Plan was in fact confirmed by Judge Curtis on November 27, 1967.

It was the initial concern, not only of the Trustee and the Special Master, but apparently also of the District Judge, that Diners' suit would endanger consummation of the Plan. At the time of filing suit, Diners' losses attributable to the use of the false credit cards were only $346,000. But losses continued to mount as more and more unauthorized charges were reported, and Diners could not say with reasonable certainty what the maximum amount of damages would be, if it were to prevail in its suit.

Yet the Special Master found that, as of December 18, 1967, the Trustee had in hand and available for use in consummating the Plan only about $1,000,000 in cash. Projected disbursements under the Plan, in order of priority, were as follows:

| | | |
|---|---|---:|
| 1. | Administrative Costs | $ 300,000 |
| 2. | Priority Tax and Wage claims | 150,000 |
| 3. | Working Capital for Reorganized Dashew | 125,000 |
| 4. | Payment of Claims of $1,000 or under | 125,000 |
| 5. | Cash Dividend to Trade Creditors | 300,000 |
| | TOTAL | $1,000,000 |

The Special Master therefore feared that if Diners' claim—entitled to priority payment as an administrative expense, Reading Co. v. Brown, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968)—mounted past $425,000, it would deprive Reorganized Dashew of part or all of the working capital needed to begin operations, and make consummation of the Plan impossible. On this basis he recommended to the District Judge that Diners' state court suit be restrained, and the claim promptly and finally adjudicated in the reorganization court.

After the filing of the Special Master's report, but before it had been acted on by the District Judge, the Trustee and Diners agreed to two Orders in Aid of Consummation, the purpose of which was to remove the obstacles to consummation adumbrated by the Special Master. By the first Order there was created a Fund to which Diners could look for payment of its claim. This fund included: (a)

$550,000 in cash, consisting of the $300,000 previously allotted to the trade creditors and $250,000 in administrative expenses, reimbursement for which the Trustee agreed to subordinate to Diners' claim; (b) the proceeds of any fidelity bonds issued to the Trustee; and (c) a contingent liability not to exceed $125,000, assumed by Reorganized Dashew, and to be used to pay the amount, if any, by which Diners' judgment exceeded the proceeds of items (a) and (b). Diners agreed to seek no recovery on its claim except from the Fund thus set up.

With the maximum amount of Diners' recovery thus determined, and with Reorganized Dashew's working capital reasonably safeguarded, consummation was possible. The second Order therefore directed the Trustee to proceed to consummate the Plan, which was done on January 8, 1968, by the transfer to Reorganized Dashew of the assets held by the Trustee.

We need not decide whether, prior to the creation of the Fund, the pendency of Diners' claim in a substantial and unliquidated amount was a sufficient embarrassment to the administration of the estate to warrant the issuance of an injunction for its trial in the reorganization court. But we are quite certain that there was no justification for the grant of injunctive relief once the danger to the consummation of the Plan had been eliminated by the creation of the Fund.

The judge below found that the docket of the Superior Court of Los Angeles County was crowded, and that delay would be much greater there than in the federal court, to the prejudice of the trade creditors and "certain administrative claimants" whose payment must await the determination of Diners' suit.

Whether this is so, we cannot say. There is no evidence in the record to support the judge's conclusion. It is in any case immaterial, since we are of opinion that only in most unusual circumstances, not here present, will the mere fact of delay owing to court congestion be sufficient to overcome the policy expressed in *Foust* and *Texas Mexican, supra*, against restraining proceedings in other courts.

The order appealed from is reversed.