In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY,** Debtor (Order No. 259).

In re **REA EXPRESS, INC. and REA EXPRESS [CANADA], LTD.**

v.

**PENN CENTRAL TRANSPORTATION COMPANY.**

No. 70–347.

United States District Court, E. D. Pennsylvania.

May 14, 1971.

Matthew W. Bullock, Jr., Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for Trustees, Penn Central Transportation Co.

Seymour Kurland, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for REA Express, Inc.

## MEMORANDUM

FULLAM, District Judge.

Petitioners REA Express, Inc. and REA Express [Canada], Ltd. have instituted a plenary action in this district, Civil Action No. 71–802, against 160 railroads, alleging violations of the antitrust laws, 15 U.S.C. §§ 1, 2 and 15. The Debtor and the Trustees are named defendants in that action, subject, however, to the granting of permission by this Court, in the reorganization proceeding, so to proceed against them. The issue presently before this Court is whether or not such permission should be granted.

I have concluded that the present record does not provide an adequate basis for determining this issue. The parties appear to be in agreement that the matter is within the discretion of the Court, citing Diners Club, Inc. v. Bumb, 421 F.2d 396 (9th Cir. 1970). Plaintiffs contend that this discretion should be exercised in favor of granting permission to proceed in the plenary action, while the Trustees argue that to do so would impose an undue burden upon the reorganization process.

The antitrust complaint which REA seeks to pursue is couched in very broad terms. REA was established in 1929 by a group of railroads. Its business consists of transporting freight, largely through the use of rail service provided by the defendant railroads. REA was wholly owned by "some of" the defendant railroads (the complaint does not specify which ones) until 1969; since then, it has apparently been wholly owned by non-railroad stockholders. The complaint charges that from 1929 to date, the 160 defendant railroads conspired together and with other unnamed railroads, to the end that the railroads which owned all of the REA stock controlled the affairs of REA in a manner which was detrimental to REA and beneficial to the railroads. Reference is made to certain contracts involving the purchase of regrigerator cars in 1955 and 1957, and to a resolution adopted by REA in April of 1967, relating to "piggy-back" contracts. Plaintiffs seek actual damages aggregating $115 million, trebled to $345 million.

On behalf of the Trustees, it is asserted that, since the award of any such substantial damages would greatly jeopardize the Debtor's estate and the likelihood of successful reorganization, the existing injunction against litigation,

contained in Order No. 1 in these proceedings, should remain in effect, and plaintiffs should be limited to asserting a claim in the reorganization proceedings. The plaintiffs, on the other hand, stress the complexity of the antitrust litigation, the need for discovery therein, the Debtor's "importance" to that litigation, and the desirability of having the antitrust charges against all of the defendants determined in a single proceeding.

While there may be merit in all of these assertions, in my opinion they do not exhaust the factors relevant to an exercise of discretion. In the first place, as the *Diners Club* case cited above makes clear, different presumptions may be applicable to causes of action arising out of the operation of the business by the Trustees, on the one hand, and causes of action which would be provable in bankruptcy on the other. *See* also Thompson v. Texas Mexican Railway Co., 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946). From the proffered pleading, it is impossible to tell in which area the principal thrust of petitioners' complaint lies. Moreover, the parties have not addressed themselves to the question of whether the trebling of damages under the antitrust laws constitutes a penalty, and, if so, whether such recovery would be permissible against a railroad in reorganization.

Since all parties agree that the ultimate disposition of any recovery against the Debtor would be a matter for treatment in the reorganization plan, and since the various elements entering into any such recovery might well be entitled to different treatment, it is desirable that the litigation, wherever pursued, should produce a judgment susceptible to such differentiation.

Obviously, if a decision is made to permit the plaintiffs to proceed in another forum, the merits of the controversy should be determined in that forum. But it seems equally clear that it would not be in the public interest, nor in the interest of the Debtor's estate and the reorganization process, to require the Trustees to devote desperately needed financial and legal resources to the defense of protracted litigation of claims which, for all the present record discloses, may be largely illusory. Without in any way pre-judging the merits of the case, I have considerable difficulty in perceiving how the stockholders of REA could be liable for damages incurred by REA prior to 1969.[1] In the absence of a basis for concluding that this view is erroneous, it would not be easy to justify requiring the Trustees to litigate or pursue discovery on the scale apparently contemplated by these plaintiffs.

However, it is also true that the filing of the reorganization petition should not be deemed to immunize the Debtor, or the Trustees, from existing or continuing liability for antitrust violations. The issue, once the true nature of the alleged claim can be ascertained, should be determined by weighing the relative advantages and disadvantages to the parties which would be involved in litigating in another forum as compared with the reorganization forum. Plaintiffs mention only the necessity of obtaining discovery; but discovery would seem to be available in the reorganization proceeding also, under § 21(b) and § 21(k) of the Bankruptcy Act (11 U.S.C. §§ 44(b) and (k)), and General Order No. 37. The appropriateness and desirability of a jury trial seem not to have been weighed by either of the parties. The Trustees have made no showing as to whether defense of the action would necessarily be any more burdensome in the plenary action than in the reorganization proceeding. The possible strain on judicial resources is another factor deserving weighty consideration.

In light of the foregoing discussion, the petitioners and the Trustees will be afforded an opportunity to supplement

---

1. *See*, e. g., Home Fire Ins. Co. v. Barber, 67 Neb. 644, 93 N.W. 1024 (1903) (Pound, J.) ; Capitol Wine & Spirit Corp. v. Pokrass, 277 App.Div. 184, 98 N.Y.S. 2d 291 (1950), aff'd 302 N.Y. 734, 98 N.E.2d 704 (1951).

the record in this matter. The petitioners, by amended petition or otherwise, will be required to specify the history of Debtor's alleged connection with and ownership of stock in REA, and the circumstances of divestiture thereof; and to set forth the precise legal theory upon which liability is asserted for damages incurred prior to such divestiture. The petitioners will also be required to specify, and distinguish between, claims arising prior to June 21, 1970, and post-bankruptcy claims, if any. Both sides will be requested to file supplemental briefs with respect to the various matters mentioned above. The petitioners will be granted thirty (30) days to supplement the record and file their supplemental brief; the Trustees will be granted an additional fifteen (15) days for reply.