## ST. LOUIS S. W. RY. CO. v. HOLBROOK.

(Circuit Court of Appeals, Fifth Circuit. February 17, 1896.)

### No. 411.

1. **FEDERAL RECEIVERS SUED IN STATE COURTS—CONCLUSIVENESS OF JUDGMENT.**
   The authority given by the act of March 3, 1887, to sue federal receivers without previous leave of the appointing court, makes a judgment obtained against such receivers in a state court, for personal injuries, conclusive as to the right of the plaintiff therein and the amount of his recovery; and it is immaterial that, according to the state procedure, the case was tried without a jury, because neither party demanded a jury. Dillingham v. Hawk, 9 C. C. A. 101, 60 Fed. 495, followed.

2. **LIENS OF RECEIVERSHIP—DAMAGE BY NEGLIGENCE.**
   When mortgage creditors ask a court to take possession of railroad property and operate it through receivers, they thereby consent to have all the liabilities resulting from such operation, including damages to persons by negligence, take precedence of their prior contract liens.
   Pardee, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Charles S. Todd, George Clark, and Sam H. West, for appellant.
W. P. McLean and Hiram Glass, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

McCORMICK, Circuit Judge. At the suit of the trustee, representing the mortgage bondholders of the St. Louis, Arkansas & Texas Railway Company in Texas, the railroad and other mortgaged property of that corporation was taken into the possession of the circuit court, and placed in the hands of receivers to operate the railroad pending foreclosure proceedings. These proceedings came to final decree July 24, 1890, ordering a foreclosure and sale of the railroad and other mortgaged property. In this decree it was provided that:

"The purchaser or purchasers of said property at said sale shall, as a part of the consideration of the purchase, in addition to the payments which may be ordered by the court of the sum bid, take the said property upon the express condition that he or they will pay off, satisfy, and discharge any and all claims now pending and undetermined in either of said courts, accruing prior to the appointment of the receivers herein, or during the receivership, which may be allowed and adjudged by either of said courts as prior in right to said final mortgages, together with all such interest as may be allowed; and also upon the further express condition that he or they will pay off, satisfy, and discharge all debts, claims, and demands, of whatsoever nature, incurred, or which may hereafter be incurred, by said receivers, and which have not been, and shall not hereafter be, paid by said receivers or other parties in interest herein. * * * And jurisdiction of this cause is retained by this court for the purpose of enforcing the provisions of this article of this decree. And the court hereby reserves the right to resell the said premises upon failure to comply within twenty days with the provisions of this or any order of the court touching the performance by the purchaser or purchasers of the terms and conditions of said sale."

A sale was made under this decree. This sale was confirmed by a decree passed January 9, 1891, in which it was provided that, upon the purchaser complying with the terms and conditions therein made, the special master commissioner should execute and deliver to the purchaser a good and sufficient deed of and to all the property, rights, and franchises of the defendant railway company, subject, however, to all the terms and conditions and provisions of the final decree of foreclosure and sale. On May 11, 1891, the circuit court ordered its receivers to deliver the property to the purchaser, providing in that order that:

"Said property, nevertheless, shall be delivered to and received by said Louis Fitzgerald, purchasing trustee, or his assigns, subject to and charged with such claims and demands against said receivers, incurred or arising out of the maintenance or operation of said railway companies by them during the period of their receivership, as may be undisputed, or, if disputed, such claims or demands as upon intervention now pending, or hereafter to be filed herein, within the time hereinafter limited, shall be adjudged by this court or the U. S. circuit court for the Eastern district of Texas, at Tyler, to be paid; * * * as also such judgments as may hereafter be rendered by either of said courts in which this cause is pending in favor of any intervener or intervention now pending and undetermined, or which may be filed prior to the 1st day of December, 1891; * * * and upon the condition that such liabilities and obligations of either of said companies, when so recognized and adjudged, may be enforced against said property in the hands of said purchaser or his assigns, to the same extent as they could have been enforced if said property had not been surrendered into the possession of said purchaser or his assigns, and was still in the hands of the court, and with the further condition that the court may, if needful for the protection of the obligations and liabilities aforesaid, so recognized by either of said courts, resume possession of said property. It is further ordered that all claims and demands of every nature

arising out of the operation and management of the railway property herein involved, when any lien upon the funds derived by the sale, or upon the property sold, is claimed, whether against said receivers or the mortgagor companies herein, shall be presented and prosecuted by intervention in this court, or in the U. S. circuit court for the Eastern district of Texas, at Tyler, prior to the 1st day of December, 1891, and all such claims or demands as may not be presented on or before the date last above mentioned, by intervention as aforesaid, shall be declared stale, and shall not be a charge upon, or enforced against, the property herein ordered to be delivered to said Fitzgerald or his assigns."

On April 11, 1893, a decree was passed discharging the receivers. In that decree the following provision was made:

"Saving and excepting, however, from the operation of this decree, all claims that may have been, or may hereafter be, established by this court as legal demands against the receivers and the property in their hands; and, as to such demands, the court here now reserves custody and control of the property and effects heretofore in the hands of such receivers, with a reservation of the right and power to hold said property and effects in the custody of the court, and to apply the same, or the earnings thereof, or so much thereof as may be necessary, for the satisfaction and payment of all indebtedness incurred by the said receivers and established by the orders of this court, including all costs of court. And it is further ordered by the court that all previous orders and decrees in this cause herein made, wherein any special provision may have been ordered and decreed with reference to any special matter or thing be, and the same shall remain, unaffected by the terms of this order of final discharge."

On June 8, 1889, while the circuit court, by its receivers, at the suit of the mortgage creditors, was operating the railroad, the appellee received severe personal injuries, which he charged were caused by the negligence of the servants of the receivers in operating trains on their railroad. On September 14, 1889, he began an action against the receivers, in the state court, on this claim. The receivers appeared and answered. On November 10, 1890, this action went to judgment in favor of appellee, R. W. Holbrook, and against the receivers, for the sum of $10,000. In Texas such actions (all civil actions) are tried without a jury, unless a jury is demanded by one of the parties. In this action neither party demanded a jury, and the case was heard and tried on its issues of fact, as well as of law, by the judge. A writ of error to the court of civil appeals was sued out, but was dismissed by that court because the writ was not taken in time. So that the judgment of the state court was subsisting, unreversed, unsatisfied, and valid, when appellee's intervention was heard in the circuit court. That court held that the judgment of the state court was conclusive as to the fact, and as to the amount of appellee's just claim against the receivers, and that the claim was a charge on the property acquired by the appellant under the decrees above mentioned. The assignment of errors presents these two questions: (1) Was the judgment of the state court conclusive as to the right of the plaintiff therein to recover, and as to the amount that should be recovered? (2) Is the claim thus established a charge on the property acquired under the decrees of the court?

The first of these questions was directly presented to this court, at a former term, in the case of Dillingham v. Hawk, 9 C. C. A. 101,

60 Fed. 495, and was answered in the affirmative. Without expressly approving all of the reasoning of the opinion, which did not then receive the full concurrence of all the judges rendering that decision, we adhere to the conclusions then expressed as to the sound construction of the third section of the act of March 3, 1887. In the state court in which appellee's action went to judgment, the parties had the right to have their case submitted to a jury, on a demand therefor. They chose to not demand a jury. Section 649 of the Revised Statutes of the United States provides for trying issues of fact in civil cases by the court, without the intervention of a jury, and the finding of the court upon the facts has the same effect as the verdict of a jury. And, where the submission of a civil case is made without the stipulation in writing, the judgment cannot be questioned, if it is warranted by the pleadings. The analogies, therefore, would seem to indicate that where parties could try their issues before a jury, and choose to try them without a jury, the finding of fact and judgment of the court should have at least the same effect as the verdict of a jury.

The second question, we think, must also be answered in the affirmative. The reasoning in the opinion in the Kneeland Cases, 136 U. S. 89, 10 Sup. Ct. 950, the review therein of the former decisions of that court, and the conclusions announced on the issues involved in that case, seem to require that, when mortgage creditors ask a court of equity to take possession of such property and operate it, they consent to have all the liabilities resulting from such operation take precedence of their prior contract liens which they are seeking by the proceeding to enforce. And can a court which in a law case would adjudge damages against a railroad corporation, in favor of one who had suffered personal injuries by the negligence of the corporation in the operation of its road, refuse or omit to require such compensation to be made when the injury is caused by the negligence of those to whom the court has to intrust the operating of the mortgaged property? As such business must be done, from the nature of the case, more or less of such liability must be incurred. It is a necessary part of the running expenses of all railroads, and while such roads are being operated by the mortgage creditors, or by the court in their interest and at their instance, such running expenses must take precedence of their mortgage liens. On this paramount equity, as well as on the particular terms of the decrees of the court under which the appellant acquired and holds the property in question, it is bound to pay appellee's judgment, or to have it executed on the property. The decree appealed from is affirmed.

PARDEE, Circuit Judge, dissenting.