SMITH v. JONES LUMBER & MERCANTILE CO. et al.

(District Court, W. D. Wisconsin. December 4, 1912.)

No. 64a.

1. COURTS (§ 508*)—FEDERAL COURTS—ACTION IN STATE COURT—STAY—JURISDICTION.

Act March 3, 1887, c. 373, § 3, 24 Stat. 544, as amended by Act Aug. 13, 1888, c. 866, 25 Stat. 436 (U. S. Comp. St. 1901, p. 582), provides that every receiver appointed by the federal court may be sued in respect to any act or transaction of his in carrying on the business conducted with the property in his hands, without previous leave of the court by which he was appointed, subject, however, to the general equity jurisdiction of the court. *Held*, that federal courts have no power to restrain or stay suits in the state courts against their receivers.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec. Dig. § 508.*

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank of Providence, 1 C. C. A. 901; Central Trust Co. of New York v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

2. RECEIVERS (§ 186*)—SUITS AGAINST RECEIVERS—EFFECT.

Suits against a receiver are in effect only against the receivership; he being regarded in the nature of a corporation sole, and the judgment recovered being against the funds in his hands.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 374–377; Dec. Dig. § 186.*

Actions by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

3. RECEIVERS (§ 186*)—MISFEASANCE—NEGLIGENCE—EFFECT.

Contracts, misfeasances, and negligences of a receiver, other than personal misconduct or personal negligence, are official and judgments recovered against a receiver are payable only out of the property in his hands; his liability being terminated by discharge.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 374–377; Dec. Dig. § 186.*]

4. RECEIVERS (§ 149*)—CLAIMS AGAINST RECEIVER—LIMITATIONS.

Where a receiver was appointed to sell and distribute the assets of a corporation, and pending the receivership tort claims arose in favor of certain persons, because of the breaking of certain dams in the receiver's possession, on some of which suit was brought in the state court, the federal court, while having no power to restrain such suits, was not bound to stay the administration of the funds derived from the sale of the corporation's assets until the state statute of limitations had run against actions for tort against a receiver, but was entitled to limit a time within which all claims against the fund should be filed in the federal court.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 261–266; Dec. Dig. § 149.*]

In Equity. Suit by the State Bank of Chicago against the La Crosse Water Power Company to foreclose certain mortgages, in which Clement C. Smith was appointed receiver. Cross-bill by the receiver against the Jones Lumber & Mercantile Company, the City of Black River Falls, and others to restrain the prosecution of tort actions in the state court, and to compel proof of the tort claims as claims against the funds arising in the foreclosure proceedings. Denied in part.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Miller, Mack & Fairchild, of Milwaukee, Wis., for complainant.

William H. Frawley and Thomas F. Frawley, both of Eau Claire, Wis., for defendants.

SANBORN, District Judge.   Cross-bill filed by leave of court in the foreclosure suit in this court of State Bank of Chicago v. La Crosse Water Power Company to foreclose certain mortgages, begun August 10, 1911, in which Mr. Smith was appointed receiver August 10, 1911.   A decree of foreclosure and sale was entered August 17, 1912, and sale thereunder October 11, 1912, which has been conditionally confirmed.   This cross-bill grows out of claims against the receiver by reason of the breaking of two dams in his possession as receiver, known as the Dells dam and the Hatfield dam, October 6, 1911, by which great damage occurred in the city of Black River Falls, Jackson county, Wis.   Persons injured by the flood claim that the dams broke by reason of the negligence of servants of the receiver, who were in the control and operation thereof; and both the Jones Company and the city have brought suits against the receiver in the circuit court for Jackson county to recover damages for his alleged negligence.

The cross-bill is brought upon the theory that these tort claims are in effect against the fund realized from the sale.   This fund, after deducting prior claims given preference by an order modifying the decree, will, if the purchasers comply with the amended decree, amount to about $180,000, while the damages claimed against it approximate $1,000,000.   It is alleged in the cross-bill that other persons besides the Jones Company and the city are interested in the fund by reason of negligence claims arising from the breaking of the dams, so that the fund is insufficient to pay the claims in full.

It is sought to bring the administration of the fund into this court by compelling all persons to here litigate their tort claims, for the following reasons:   The estate in the receiver's hands, consisting only of the balance of the fund arising from the sale, is insolvent; the litigation of each tort claim separately in the state court will cause increased expense; the administration will be delayed, since actions for such alleged negligence may be begun at any time within six years from the date of the giving way of the dams; if all such actions are to be defended by the receiver, the cost will greatly reduce the dividend to be ultimately declared, and may entirely exhaust the fund; and the proper rules of equitable administration require that this court take sole jurisdiction of all such claims, in order to prevent a multiplicity of suits and preserve the fund for those entitled thereto.

It is accordingly prayed that the claims be determined exclusively in this court, so that the fund may be equitably distributed and paid into court, the receiver discharged, and the tort claims against him barred, all persons restrained from proceeding against him as receiver, and be required to claim only against the fund, the Jones Company and city restrained from prosecuting their suits in the state court, and they and all others be required to exhibit their claims and become parties to the foreclosure suit by February 1, 1913, and in

default thereof be precluded from the benefit of any decree or distribution of the fund derived from the sale.

On November 4, 1912, the purchasers petitioned for confirmation of the sale. At the same time the Jones Company and the city applied for an amendment of the decree, so as to provide that any judgments recovered by them be paid out of the proceeds of the sale, ordering a resale, with a provision for a minimum price of $1,000,-000, and that such sale should not adversely affect them. Upon this hearing an amendment to the decree was made November 6, 1912, providing, among other things, that the whole bid of $500,000 should be paid in cash, except $75,000 payable in bonds, and that the sale be confirmed; but the purchasers were allowed four months to comply with the decree as amended, and in default of such compliance the sale be set aside, and the $100,000 in money paid at the time of sale be refunded. The receiver is still in possession of the property sold, and steps for reorganization and compliance with the amended decree are in progress.

The property has been sold, fully discharged of all claims of third persons against it, whether arising ex contractu or ex delicto, all which claims have been transferred to the fund paid or to be paid by the purchasers. The two suits now pending against the receiver in the state court were begun on the day of the sale. Afterwards, on petition of the plaintiffs in those suits, their claims were decreed to be against the fund, not the property sold, in a certain order of priority. Recoveries in the suits would constitute claims against the fund for the amounts recovered, or, in case the fund were insufficient, for pro rata amounts. So the somewhat embarrassing question is presented whether the court, without restraining the suits in the state court, shall in effect render litigation in the state court useless by requiring all claims against the fund to be presented and liquidated in this court. If this is not done, other suits against the receiver for the breaking of the dams (unless he should be sooner discharged) may possibly be brought at any time up to the end of the period of limitation, October 11, 1917. This might greatly embarrass the administration of the fund by reason of delay.

[1] The course of proceeding would be clear and plain, were it not for the statutory rule adopted in the jurisdiction act of 1887, as amended by 25 Stat. 436, 4 Fed. Stat. Ann. 387, U. S. Comp. Stats. 1901, p. 582, and section 66, Judicial Code 1911 (Act March 3, 1911, c. 231, 36 Stat. 1104 [U. S. Comp. Stats. Supp. 1911, p. 155]), which reads as follows:

"Sec. 3. That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

This statute has been given a rather liberal construction, as one further limiting the federal jurisdiction. It—

"abrogated the rule that a receiver could not be sued without leave of the court appointing him, and gave the citizen the unconditional right to bring

his action in the local courts, and have the justice and amount of his demand determined by the verdict of a jury. He ceased to be compelled to litigate at a distance, or in any other forum, or according to any other course of justice, than he would be entitled to if the property or business were not being administered by the federal court." Gableman v. Peoria, etc., R. Co., 179 U. S. 335, 338, 21 Sup. Ct. 171, 172 (45 L. Ed. 220).

It is entirely clear from the Gableman Case, and many other decisions in the Circuit Courts of Appeals and Circuit Courts, that no power exists in this court to restrain or stay receiver suits in the state courts. Dillingham v. Hawk, 60 Fed. 494, 9 C. C. A. 101, 23 L. R. A. 517; St. Louis S. W. R. Co. v. Holbrook, 73 Fed. 112, 19 C. C. A. 385; Central Trust Co. v. East Tennessee, V. & G. R. Co. (C. C.) 59 Fed. 523; Manhattan Trust Co. v. Chicago El. Tr. Co. (C. C.) 188 Fed. 1006.

[2, 3] Further, it is well-settled law that suits against a receiver are in effect only against the receivership; he being regarded as in the nature of a corporation sole. Such suits are against the funds in his hands. His contracts, misfeasances, and negligences (apart from personal misconduct or personal negligence) are official, not personal, judgments against him are payable only from the property or money in his hands, and his discharge as receiver absolutely puts an end to his liability. McNulta v. Lockridge, 141 U. S. 332, 12 Sup. Ct. 13, 35 L. Ed. 796; Texas & P. R. Co. v. Johnson, 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81, affirming 76 Tex. 421, 13 S. W. 463, 18 Am. St. Rep. 60; Hanlon v. Smith (C. C.) 175 Fed. 192; Gray v. Grand Trunk & W. R. Co., 156 Fed. 736, 84 C. C. A. 392. In a case like this, where the property had been sold free from all claims in tort or contract, and such claims have been made payable only out of the purchase price, it seems that a discharge of the receiver before judgment in the state court would abate the suits there pending, subject to be revived against all persons claiming the fund, if within the jurisdiction of the state court. In that event the act of 1887 (authorizing suits against receivers) would have no further application, and the continued prosecution of such suits might properly be restrained by this court. Jesup v. Wabash, St. L. & P. R. Co. (C. C.) 44 Fed. 663; Fidelity, etc., Co. v. Norfolk & W. R. Co. (C. C.) 88 Fed. 815; Stewart v. Wisconsin C. R. Co. (C. C.) 117 Fed. 782 (Jenkins, C. J.); Farmers' L. & T. Co. v. Chicago & N. P. R. Co. (C. C.) 118 Fed. 204 (Jenkins, C. J.).

[4] While the court has no power to restrain the suits against the receiver in the Jackson circuit court, it has undoubted authority to administer the fund under its control, derived from the sale, and adjust all claims payable therefrom. What should be done in such a case, in the exercise of discretion, is another matter. But the administration of the fund may be wound up in a speedy manner, without waiting for the lapse of all possible claims against such fund through the running of the state statute of limitations of six years regarding actions for torts against receivers. This rule is laid down in Porter v. Sabin, 149 U. S. 473, 479, 13 Sup. Ct. 1008, 1010 (37 L. Ed. 815), as follows:

"When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the

estate, the possession of the receiver is the possession of the court, and the court itself holds and administers the estate, through the receiver as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it. Wiswall v. Sampson, 14 How. 52, 65 [14 L. Ed. 322]; Peale v. Phipps, 14 How. 368, 374 [14 L. Ed. 459]; Booth v. Clark, 17 How. 322, 331 [15 L. Ed. 164]; Union Bank v. Kansas City Bank, 136 U. S. 223 [10 Sup. Ct. 1013, 34 L. Ed. 341]; Thompson v. Phenix Ins. Co., 136 U. S. 287, 297 [10 Sup. Ct. 1019, 34 L. Ed. 408]. It is for that court, in its discretion, to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere. It may direct claims in favor of the corporation to be sued on by the receiver in other tribunals, or may leave him to adjust and settle them without suit, as in its judgment may be most beneficial to those interested in the estate. Any claim against the receiver, or the corporation, the court may permit to be put in suit in another tribunal against the receiver, or may reserve to itself the determination of; and no suit, unless expressly authorized by statute, can be brought against the receiver without the permission of the court which appointed him. Barton v. Barbour, 104 U. S. 126 [26 L. Ed. 672]; Texas & Pacific Railway v. Cox, 145 U. S. 593, 601 [12 Sup. Ct. 905, 36 L. Ed. 829]."

Although it would seem to be within the power of the court to require all claims against the fund, including the two suits in the state court, to be filed and proved in this suit, within a limited time, such a course would appear to disregard the equity of the statute of 1887, as explained in the Gableman Case. It would force these plaintiffs to abandon their actions in the state court and submit their proofs here. While a jury trial might properly be awarded to dispose of their claims, and the trial had either at Black River Falls or Eau Claire, yet the verdict would be advisory only, quite different from a verdict in the state court, over which the court would have no power. This question should, however, be further considered on the hearing of the cross-suit. For the present no restraining order against the prosecution of these two suits will be entered.

As already explained, the purchasers have been allowed until March 6, 1913, to comply with the amended decree. If they do so, it will then be proper to confirm the sale absolutely, turn over the property, and discharge the receiver. This will leave a fund in court applicable to the payment of these claims against the receiver, and certain other expenses of administration, of about $180,000. Should the receiver be discharged, as contemplated, all claims against the fund except those then represented by suits against the receiver must be made in this court. The state statute of limitations on tort claims against the receiver will no longer apply. A proper decree upon the cross-bill, answers, and replications (already filed), limiting the time for the filing and proof of all claims against the fund, can then be made. Such an order at this time would not be authorized, since it cannot be known whether the purchasers will comply with the amended decree. If they fail to do so, there may be no fund for distribution.

An order should be entered, denying the motion of the receiver for restraining orders against the Jones Lumber Company and the city of Black River Falls, requiring the receiver to defend said suits in the state court, and postponing consideration of the application of the receiver for an order limiting the time for filing claims against the fund until the hearing of the cross-suit. As one of the suits in the state court has been removed to this court, now subject to a motion to

remand, nothing in this opinion, or the order to be entered thereon, is to be taken as affecting the status or venue of that action.

NOTE.—On further hearing, the motion to remand, referred to, was granted. The cross-suit was heard January 13, 1913, and a decree entered for 60 days' notice to all tort claimants, other than the Jones Lumber & Mercantile Company and City of Black River Falls, to file their claims in this court within 60 days, or be forever barred. The order denying an injunction against the Jones Company and city was made absolute.