INVESTMENT REGISTRY, Limited, v. CHICAGO & M. ELECTRIC
RY. CO. et al.

(District Court, E. D. Wisconsin. April 19, 1913.)

1. RECEIVERS (§ 150*)—CLAIMS—ALLOWANCE—PAYMENT.

A judgment having been recovered for personal injuries against an electric railroad and the receiver of another railroad as joint tortfeasors, and having been assigned by the judgment creditor to petitioner at the instance of his father, evidence *held* to warrant a finding that such assignment had not been made in good faith, but with the intention of compelling payment by the receiver to the benefit of the other railroad company, and that petitioner was therefore not entitled to an order in the receivership proceedings requiring the receiver to pay the judgment.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 267, 268; Dec. Dig. § 150.*]

2. RECEIVERS (§ 174*)—FEDERAL COURTS—CONTROL—CLAIMS.

Judicial Code (Act March 3, 1911, c. 231) § 66, 36 Stat. 1104 (U. S. Comp. St. Supp. 1911, p. 155), in relinquishing to parties and to other courts the right to institute and entertain, without leave, proceedings against federal court receivers in respect to the conduct of their business,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

has reserved to the federal courts appointing the receivers sole power over the matter of satisfaction of the rights determined, so that the mere recovery of a judgment against a federal court receiver in another court did not entitle the judgment creditor or his assignee to an order requiring the receiver to pay the same as a matter of legal right.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 333–343; Dec. Dig. § 174.*]

In Equity. Suit by the Investment Registry, Limited, against the Chicago & Milwaukee Electric Railway Company and others. On exceptions by the receiver of the defendant's property to the report of a master on petition of Ira S. Lorenz for an order directing the receiver to pay a judgment rendered against the defendant and against the Milwaukee Electric Railway & Light Company jointly and severally as joint tort-feasors for personal injuries to one Kaminski, by whom the judgment was transferred to Lorenz. Exceptions sustained.

In the circuit court for Milwaukee county one Kaminski brought suit against the Milwaukee Electric Railway & Light Company, a Wisconsin corporation operating a street railway in Milwaukee, and the Chicago & Milwaukee Electric Railway Company, a like corporation, and the herein receiver of the above-named defendant Chicago & Milwaukee Electric Railway Company, he being in possession of the stock and property, and as such operating the railroad, of said Chicago & Milwaukee Electric Railway Company. Such proceedings were had therein that on January 6, 1912, judgment was rendered and entered in favor of the plaintiff, and against the defendants jointly, for the sum of $5,193.95; the cause of action being for personal injuries, the liability of the defendants joint and several, without right of contribution. It further appeared that on January 8, 1912, two days after its rendition and entry, Kaminski executed an instrument in writing, which was delivered January 10, 1912, assigning said judgment to the petitioner, Ira S. Lorenz. Thereafter, but without advising the herein receiver of the assignment, Lorenz, as assignee, in the name of Kaminski, caused execution to be issued out of said circuit court, directed to the sheriff of Milwaukee county, commanding him to make the same out of property of the defendant Chicago & Milwaukee Electric Railway Company, in the possession of the receiver as aforesaid. The latter thereupon petitioned this court for an order restraining such levy, which was granted, without prejudice, however, to the right to file an application such as is now before the court.

The application being thus made by petition averring the rendition, entry, and the present force of the judgment, the receiver by answer thereto alleges, in substance, that Lorenz, the petitioner, acquired such judgment under and by virtue of an understanding with the state court codefendant, Milwaukee Electric Railway & Light Company, with funds furnished by said last-named defendant; for the purpose of relieving it from the obligations of such judgment, and with the design of making the amount thus paid to the plaintiff out of the receiver herein, or out of the company whose property was in his hands. In other words, it was claimed that the transaction of the petitioner was colorable, for the sole purpose of benefiting the codefendant, the Milwaukee Electric Railway & Light Company—that is, it amounted to a satisfaction of the judgment. Such issues were referred to a master, whose report is now before the court for review. The master's findings, which are the subject of attack, are as follows:

"That the funds in the said Merchants' & Manufacturers' Bank, upon which said check was drawn and out of which the said check was paid, were the sole property of the firm of Lorenz & Lorenz, and that the said check was drawn by the said Ira S. Lorenz and the said judgment purchased by him by and with the consent of F. C. Lorenz, the only other member of the said firm.

"That the said Ira S. Lorenz had, at the time of the purchase of the said judgment, no understanding, agreement, or contract of whatsoever kind or nature with the Milwaukee Electric Railway & Light Company, or with any of its officers or agents, in regard to the purchase of the said judgment, and that he was not at said time acting as the agent, trustee, or attorney for the said Milwaukee Electric Railway & Light Company in the purchase of the said judgment, but that he purchased said judgment solely for and in his own behalf.

"That the said Ira S. Lorenz has not sold, assigned, transferred, or set over unto any other person, firm, or corporation any of his rights, titles, and interest in and to said judgment, but that he is still the owner and holder thereof.

"That the said Milwaukee Electric Railway & Light Company has not in any manner or upon any account paid the said Stanislaus Kaminski or the said Ira S. Lorenz the full amount of the said judgment, with interest and costs, or any amount whatever, on account of judgment, but that said judgment is still wholly unpaid and unsatisfied."

The receiver, by way of exception to the master's findings, urges that the funds used for the purchase of the judgment were not the property of the law firm of which the petitioner is a member, but in fact belonged to Fred C. Lorenz, the father of the petitioner, at whose instance and on whose behalf the judgment was purchased; that the evidence shows the fact to be that some agreement of some kind was made by said Fred C. Lorenz, in regard to the purchase of the judgment, with the Milwaukee Electric Railway & Light Company, its officers and agents; that the master should have found the fact to be that Fred C. Lorenz and Ira S. Lorenz withheld and fraudulently and falsely concealed from the master the terms and conditions of such agreement, and that they were guilty of a fraud upon the court therein; that the master should have concluded against the granting of the petition.

Other facts, pertinent to the questions presented, are referred to in the opinion.

Quarles, Spence & Quarles, of Milwaukee, Wis., for receiver.
Lyman G. Wheeler, of Milwaukee, Wis., for petitioner.

GEIGER, District Judge (after stating the facts as above). The exceptions to the master's report, the contentions of the receiver respecting petitioner's right to relief upon facts not found, but disclosed in the evidence, necessitate a discussion of the evidence from two points of view:

First. Should the master, upon the whole evidence, have found the absence of an agreement or understanding such as is claimed to have existed between the petitioner, or his father, and the Milwaukee Electric Railway & Light Company? This involves the further question whether, if there was no agreement, the master was justified in not finding that the petitioner and his father purchased the judgment in view of circumstances and a situation to be regarded as the equivalent of an agreement or assurance that the Milwaukee Electric Railway & Light Company would stand as an indemnitor against any loss which might be sustained through the purchase of the judgment.

Second. Irrespective of any relations between Lorenz and the Milwaukee Electric Railway & Light Company, do the situation of Lorenz at the time of acquiring the judgment, his motive to acquire the same, and his manner of seeking to enforce it, disclose a purpose and a course of conduct calculated to harass and annoy the receiver here-

in, which in and of itself create a situation of disfavor in equity, barring relief at this time?

In considering the matter, I shall not analyze the evidence claimed to support the first exception, because whether the petitioner was a principal, agent, or associate in the transaction is immaterial. The facts are undisputed that he acted with and upon the prompting of his father, and the term "petitioner" is used as referring broadly to the transaction to which they were both parties, though the petitioner personally had rather a nominal participation therein.

[1] Considering the evidence, therefore, in the light of the two propositions above, it is in substance this: Fred C. Lorenz and the petitioner, Ira S. Lorenz, father and son, are practicing law in Milwaukee as Lorenz & Lorenz. The father testified that at or about the time of the rendition of the Kaminski judgment he learned thereof through one Rausch, a quite intimate social acquaintance, who is claim agent of the Milwaukee Electric Railway & Light Company. Such knowledge, however, was gained quite casually in conversation at the lunch table. Lorenz had never before purchased judgments of the kind in question, though he had purchased foreclosure judgments. He at once opened communications with the attorneys for the plaintiff, Kaminski, and within a day or two the assignment of the judgment had been prepared, followed on the fourth day after its rendition by the delivery of the written assignment to the petitioner herein. The consideration—the full amount of the judgment—was paid by the check of the law firm, the funds for that purpose being derived, about $1,000 nominally firm funds, and $4,000 additional credited to such firm account, the proceeds of a real estate mortgage placed by Fred C. Lorenz upon his homestead at that time. He made no examination of the record, the testimony, or proceedings in the Kaminski Case, and did not discuss with counsel for plaintiff, or for either of the defendants, the merits of the controversy, the likelihood or probable results of an appeal, but does testify that Rausch said to him that the Milwaukee Electric Railway & Light Company was probably "stuck," and negatived the probability of an appeal. The petitioner himself testified to little more than the routine matter of drawing the check and the formal receipt of the assignment of the judgment, although he denied the existence of any understanding such as was alleged by the receiver herein to have existed. His father, when asked to give the reasons for the purchase, claimed, rather indefinitely, that he intended to take an assignment of this judgment before it was entered, but was unable to state how, when, or under what circumstances such intention arose, excepting the casual meeting with Rausch. Negotiations were taken up with counsel for Kaminski, indirectly, but, as stated, without any examination whatever of the record in the case. But in his talk with Rausch, the latter told him of the situation between the two companies, intimating that the Milwaukee Electric Railway & Light Company had a right of way at the place where the collision resulting in the injury happened, and that the company represented by the receiver herein should pay, or should have paid, the claim involved in such suit. However, the judgment was purchased without any understanding re-

specting an appeal. Lorenz had but one talk with Rausch, and would not state that, excepting to the extent necessary to procure the assignment and pay the consideration, he had any further talk with anybody about the matter. · His testimony respecting the occasion of the talk with Rausch is as follows:

"Q. And Mr. Mat. Rausch, then, is the only person in the employ of the defendant Milwaukee Electric Railway & Light Company with whom you talked in regard to this? A. That is my impression. Q. Did he request you to buy that judgment? A. No, sir. Q. Did he suggest it? A. No, sir. Q. He just simply gave out this general statement of it? A. I think it was a mere accident he gave it out. Q. It was just .in casual conversation? A. Yes, sir. Q. Without any idea on his part, apparently, that you would found any action on this conversation—is that correct? A. I don't know. Q. He had no 'idea, at the time he so talked to you, that he was inducing you to buy this judgment? A. I could not say whether he had or not, but my impression is he didn't. If he did, he concealed it."

It further appears that, after procuring the assignment of the judgment, neither the petitioner nor his father gave notice thereof to the receivers, but claim to have given notice to the defendant Milwaukee Electric Railway & Light Company. When pressed to give additional reasons for purchasing the judgment, petitioner's father gave the following:

"In addition to the reasons I stated this morning, I have always heard that the Chicago-Milwaukee people were not honest with the people that lived on their line. In the first place, they promised to give us good service on First avenue. They are giving it to us every 15 or 20 minutes. I happen to have the pleasure of living on that line on the corner of First and Walker. If I go out in the morning and miss one car, I have to wait 15 or 20 minutes for another. If I am caught in the rain over town at 8 or half past 8, and miss one car, I got to wait 20 or 30 minutes to get another. They have practically confiscated my property on First avenue. The street is very narrow. A load of hay can't pass the street cars on that highway without a great deal of inconvenience. Though I am not a farmer, I have observed that. In addition to that, they operate on that line freight and express cars. I don't know about the freight, but I know they operate express cars, and stop right almost in front of my house, unload milk cans, and load them on. They go down that decline, sometimes two cars, two large Chicago interurban cars hooked together, and they go down that hill on Washington street at a lightning rate of speed, and especially at 1 or 2 o'clock in the morning. Not infrequently they wake my wife up, and occasionally myself, when they go down that street or up, and you will find big trails of dust there, and it always comes into our house. During this summer, when my wife was away, the dust piled up on the center table a quarter of an inch deep every week or ten days. We had our granddaughter staying at our house for a few nights, and it would awaken her every few minutes. They don't sprinkle the tracks, and they are a common nuisance on that highway. Besides that, we represented at one time a number of clients, I guess represent them now, clients and neighbors, and wanted some redress. We did threaten to commence some proceedings to compensate these people for the damage they have suffered, and their attorney came around one time with a story about the company being hard pressed and wanting to settle up the matter after a little time, and if we commenced proceedings it would complicate matters further, and I learned afterwards that was for the purpose to get us to hold back. Besides, they kill people down in the Polish district every few days; not every day, but frequently. And they are the same way with adjusting claims. They don't even pay men that they employ what they promise to pay, and I for one feel very unfriendly to the Chicago & Milwaukee Railroad, and I

would give them a check to-morrow for $1,000 if they would get off that street, and I am willing to sell my property for $1,000 less than it is worth."

He further testified that he considered all these grievances at the time he purchased, and that they influenced him in the acquisition of the judgment, that he never told any one whatever of his intention to buy it, and that he had no conversation with the petitioner personally until the time he told him to make out a check.

The president, general manager, counsel, and claim agent for the Milwaukee Electric Railway & Light Company, as witnesses, denied an agreement or understanding with Lorenz respecting the purchase of the judgment. There was testimony, given under objection, but alluded to by counsel for the petitioner upon argument before the court, disclosing rather strained relations between that company and the receiver herein respecting settlement of claims arising in collisions where, as in the Kaminski Case, both parties were adjudged to be liable—the Milwaukee Electric Railway & Light Company apparently feeling aggrieved over the unwillingness of the receiver to treat upon a fair basis for division of the amounts to be paid for the settlement of such liabilities.

If, in order to sustain the exceptions of the receiver, the court were obliged to spell out of the evidence definite terms of some agreement between the petitioner and the Milwaukee Electric Railway & Light Company, the task would, of course, be impossible of performance, because the existence of such, or the presence of any understanding, is denied by those who could, if they would, testify to it. This, however, does not necessitate overruling the exceptions. The court is not bound to believe the mere words stated by witnesses. On the contrary, their testimony must be judged in the light of the subject-matter concerning which they are called upon to speak, certainly in the light of ordinary probabilities.

"Admitted facts are sometimes just as potential to impeach a witness as positive testimony. A court is not bound to accept a statement as true because there is no direct testimony contradicting it. It may be inherently improbable, or it may be impeached by the attendant circumstances. Courts are never bound to accept the statement of a witness which is against all reasonable probability." Zimmerman v. Bannon, 101 Wis. 412, 77 N. W. 737.

That one situated as was the father of the petitioner, without the slightest information concerning the subject-matter of a contract subsequently entered into with Kaminski, without acquainting himself thereof, or making inquiry which the most careless would make, without endeavoring to ascertain or calculate (so far as that is ever possible) the hazards involved in the purchase of a judgment subject to appellate review, should mortgage his homestead to enable purchase of such judgment, resulting in no profit to himself—the testimony shows that $4,000 of the purchase money was borrowed at 6 per cent.; that this ensued almost instantly upon acquiring *casual* knowledge of the rendition of the judgment; that it is to be justified solely by the desire to make a safe "investment" (which, as just noted, yielded nothing) or as a means (palpably ineffectual) to redress or avenge grievances of the character detailed by him—these considera-

tions must be accepted as reasonable, to the exclusion of the alternate view to be referred to, if the master's specific findings and general conclusion are to stand. I have no hesitation in rejecting them as unworthy of belief, and in lieu thereof to accept this as the only reasonable and just inference to be drawn from the evidence: that the judgment in question was purchased upon the suggestion of Rausch, acting for the Milwaukee Electric Railway & Light Company; that while the testimony respecting the absence of a formal, definite agreement or understanding may be literally true, it is equally true that the relations between Rausch and Lorenz, their unquestioned recognition of the strained relations between the two railway companies respecting the adjustment of liabilities such as this judgment, dispensed with the necessity of formal agreement. Each recognized what the other meant, and what was to be done, without such formality. They mutually recognized the situation as one justifying the faith, which Lorenz undoubtedly had, that the Milwaukee Company would, by failing to appeal, or in some other way, stand as indemnitor for any loss which might come to him through the hazards so obviously involved. The testimony given by the president, the manager, and the counsel of such company that they never authorized any agreement or understanding, that they were ignorant in every particular of the transaction respecting the purchase of the judgment, is believed to be absolutely true. But the meeting between Rausch and Lorenz accomplished *something*. The purchase of the judgment, the failure to take an appeal, the issuance of an execution against a receiver, the pressing of the claim before this court, when at all times there was at hand the means of satisfaction out of a solvent codefendant, are not to be regarded as mere successive fortuities, but as quite conclusive evidence of an effort to accomplish what was intended by Rausch and Lorenz to be accomplished in the interest of the former's principal. Even though proof of a formal understanding be wanting, the inference of a situation regarded by the parties as the equivalent is irresistible. Neither Lorenz nor the Milwaukee Electric Railway & Light Company can be heard to say that Rausch's knowledge of, intention, and undoubted participation in the matter should not be imputed to his principal. The master should have so found.

[2] Upon the other proposition, and independently of the foregoing, I am satisfied that the petitioner's prayer for relief should be denied, solely on the ground of his inequitable conduct. He was obliged to admit, as he did, that although he purchased this judgment, and caused execution to be issued against the receiver herein, simply because he thought he ought to pay the judgment, he knew that the Milwaukee Electric Railway & Light Company was perfectly solvent and would respond instantly to an execution. Notwithstanding that, and apparently for the mere purpose either to annoy or harass the receiver, and in that way to redress the grievances which he claimed had been suffered by himself and others through the operation of the road, or indirectly to give to the Milwaukee Electric Railway & Light Company the benefits of such agreement as it conceived should be

entered into for the adjustment of these joint and several liabilities, he presses his execution, and now his claim in this court. His counsel is in error in urging that he is asserting an undoubted legal right. The federal statute (Judicial Code [Act March 3, 1911, c. 231] § 66, 36 Stat. 1104 [U. S. Comp. St. Supp. 1911, p. 155]), in relinquishing to parties and to other courts the right to institute and entertain, without leave, proceedings against federal court receiver in respect of the conduct of their business, has reserved to the appointing courts sole power over the matter of satisfaction of the rights determined in such other courts. Dillingham v. Hawk, 60 Fed. 497, 9 C. C. A. 101, 23 L. R. A. 517; St. Louis & S. W. Ry. v. Holbrook, 73 Fed. 112, 19 C. C. A. 385; Mo. Pac. Ry. v. Tex. Pac. Ry. Co., 41 Fed. 314; Willcox v. Jones, 177 Fed. 870, 101 C. C. A. 84; Tex. & Pac. Ry. Co. v. Johnson, 151 U. S. 81, 14 Sup. Ct. 250, 38 L. Ed. 81.

If the original plaintiff, Kaminski, were before the court asking satisfaction of a judgment obtained as indicated, satisfaction would not be withheld, except for good reasons pertaining to the administration of the estate, in view of the rights of other creditors. But the petitioner here has allowed his own inequitable conduct to intervene, and is in no position to ask the favor which Kaminski might otherwise ask and receive. He cannot ask the court to aid him in accomplishing the purposes which he says prompted him to come into relation with the receiver of this court, and he cannot complain if the court exercises its power to frustrate him in their accomplishment. The undisputed facts show conduct so grossly inequitable that relief should be denied upon such ground alone.

The exceptions to the master's report are sustained, and an order may be entered denying the prayer of the petition, with this reservation: If the petitioner, after exhausting his legal remedies, fails to obtain satisfaction of the judgment claimed to be owned by him out of the Milwaukee Electric Railway & Light Company, he may, if so advised, renew his application for satisfaction of the same by the receiver.