Hillsborough,  
March 7, 1939. } No. 3021.

### Thomas F. McGreavey

*v.*

### William Parker Straw *& a. Receivers.*

*Sullivan & Sullivan* (by brief), for the plaintiff.

*Alvin A. Lucier* (by brief), for the defendants.

PAGE, J.   The Amoskeag Manufacturing Company maintained the reservoir for the purpose of fire protection for some of the company's buildings.   On December 24, 1935, the company filed a petition under section 77B of the Bankruptcy Act, admitting insolvency and seeking to reorganize.   The company was decreed a bankrupt on January 20, 1936, by the United States District Court for the District of Massachusetts.   The principal business of the company had been the manufacture of textiles, but it had very substantial real estate holdings in Manchester.   On June 19, 1936, there was a reference to a special master to ascertain and report whether reorganization was possible.   Early in July the master found and reported that it was impossible and recommended liquidation forthwith.

On July 21, 1936, the District Court ordered that the estate of the company be liquidated and appointed Joseph P. Carney and Frederic C. Dumaine temporary receivers.   The drowning of the plaintiff's intestate occurred on August 11, 1936.   Three days later, the District Court appointed as trustees the defendants Straw, Carney and Dumaine.   The writ, dated December 20, 1937, alleges that the reservoir and the adjacent land had been permitted to fall into such disrepair as to be dangerous, that this fact was known to the predecessors in office of the defendants, whose servants nevertheless invited and allowed the plaintiff's intestate to go upon the premises, and that the deceased, while in the exercise of due care, and because of the negligence of the defendants' predecessors in office, was drowned.

Upon entry of the writ, the defendants appeared specially and filed their plea to the jurisdiction, on the ground that no suit could be maintained without permission of the bankruptcy court.   The defendants moved that the suit be dismissed or the proceedings stayed unless or until such permission should be obtained.   The motion was denied on March 19, 1938.

No permission for leave to liquidate the plaintiff's claim in the Superior Court was ever obtained from the District Court of the

United States. The defendants were discharged by the latter court on November 17, 1938.

It may be assumed that the funds derived from the liquidation of the bankrupt's assets were fully distributed when the trustees were discharged. It may further be assumed as matter of law, though without decision, that the trustees are no longer more than nominal parties, from whom no execution could be collected. But that does not necessarily deprive the Superior Court of jurisdiction. For the purposes of this transfer only, "it is admitted by the defendants that as Trustees they had provided for insurance coverage as respects this accident."

By this we understand (1) that, although the insurance company is not a party defendant, it is represented by counsel in court and cannot object to a present determination of the jurisdictional question; and (2) that, questions of coverage and liability reserved, there is an insurance fund entirely independent of the assets of the bankrupt and not controlled by the bankruptcy court or subject to distribution by that court as an asset of the bankrupt. If these assumptions be true, and the insurance company should be brought in as a party by proper equitable proceedings, the plaintiff could apparently collect any judgment he may obtain, provided only that the court has jurisdiction of the pending action. *Bosse* v. *Company*, 88 N. H. 98. That being the local law as to the reaching of the fund, it would apparently be sustained in the federal courts. *Texas &c. Railway Co.* v. *Johnson*, 151 U. S. 81; *Texas &c. Railway Co.* v. *Bloom's Adm'r.*, 164 U. S. 636; *Hanlon* v. *Smith*, 175 Fed. 192; *Chicago &c. R. R. Co.* v. *Hulbert*, 205 Fed. 248. This principle, which applies whether or not the claim is presented to the receivership court, and whether the suit is begun before or after discharge of the receivers, has been recognized also by state courts. *Denver &c. R. R. Co.* v. *Gunning*, 33 Colo. 280; *Lassiter* v. *Railroad*, 163 N. C. 19; *Kansas City &c. Ry. Co.* v. *Latham*, 182 S. W. Rep. 717; *Hawkins* v. *Railway*, 202 S. W. Rep. 1060.

In view of the possibility that the plaintiff may enforce a recovery without recourse to the bankruptcy court, it is more than a moot question whether by the entry of the pending action the Superior Court acquired jurisdiction of the defendants.

In so far as bankruptcy courts have exclusive jurisdiction over their appointees, such jurisdiction is based upon the necessities of the case. The proceedings in the bankruptcy court in this instance passed through two successive phases. During the first phase the

proceedings were purely equitable proceedings looking towards possible reorganization and the continuance of the business. This phase ended, and the second began, on July 21, 1936, when the bankruptcy court decreed that the trust property be sold in order that there might be a distribution to the parties in interest. Thereafter the necessities of the case demanded that the bankruptcy court look to the preservation of the distributable assets and the largest possible distribution to the creditors. One way of attaining the ends of the receivership in both stages was to protect the property from depletion by such claims as the plaintiff's. It is to be presumed that the temporary receivers appointed on July 21, 1936, procured insurance with that in mind. It is further to be presumed that when the bankruptcy court approved the accounts of the temporary receivers and of the trustees later appointed, the cost of such insurance was likewise approved as a proper expense of administration for the ultimate benefit of the creditors.

But it does not follow that the insurance fund itself was under the exclusive jurisdiction of the bankruptcy court. The court had no necessarily exclusive power of distribution over the fund for the preservation of the equities of the creditors. As far as appears, the plaintiff is the only person other than the insurer who has an equitable interest in the fund. If the receivers had such an interest prior to distribution by the court of the bankruptcy estate, it was an interest derived only from their duty to preserve the whole estate for the creditors. That duty having presumably been discharged by complete distribution under the court orders, it might be argued that the bankruptcy court never had any more than a purely incidental jurisdiction to procure the creation of the fund and its continuance in being until the trustees were discharged and final distribution made to the general creditors; that the action of the bankruptcy court was based upon this assumption; that the bankruptcy court never assumed to have jurisdiction over the fund itself, and as a matter of law could have had no jurisdiction to determine its distribution unless one in the plaintiff's position had chosen as an intervenor to claim such jurisdiction. As far as we know, this is the first case to occur in which this line of reasoning could be adopted. The plaintiff has not urged it upon us. Therefore, since the question of jurisdiction may be decided upon narrower grounds, we are content with raising this broader question without deciding it.

The plaintiff's case was briefed in reliance upon section 66 of the Judicial Code (U. S. Code Ann., Title 28, s. 125, originating in section

3 of the Judiciary Act of March 3, 1887). That section reads thus:

"Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice."

A number of questions will be raised in connection with the construction of this statute and its application to the facts before us.

I. Does the section apply to suits against trustees in bankruptcy?

The language is broad enough to include such officers of the court as well as receivers appointed in purely equitable proceedings. Trustees in bankruptcy may not be receivers in the narrow sense, but they do come within the general description of "receivers" and "managers." Accordingly it has apparently been conceded nearly unanimously that the section applies to suits against temporary receivers in bankruptcy. *In re T. L. Kelly &c. Co.*, 102 Fed. 747; *In re Kanter & Cohen*, 121 Fed. 984; *In re Kalb & Berger Mfg. Co.*, 165 Fed. 895.

In *Vass* v. *Company*, 59 Fed. (2d), 969, decided in 1932, the Circuit Court of Appeals, Second Circuit, took the position that the statute could not apply to suits against a trustee in bankruptcy. The reason assigned was this: "Until some hitherto unsuspected construction is placed upon *Riehle* v. *Margolies*, an action against a trustee in bankruptcy for transactions of his own, must be brought in the bankruptcy court, unless it gives leave to liquidate elsewhere; it concerns the distribution of the assets as much as a claim against the bankrupt, and is justiciable only as that is."

The last clause of the quotation is a statement of the nature and reason of the equitable jurisdictional rule of the federal courts prior to March 3, 1887. Its present efficacy depends entirely upon the scope that the Congress intended to give to the statute. To the extent designed, the statute has changed the rule. The court in the *Vass* case seem to have gone upon the theory that *Riehle* v. *Margolies*, 279 U. S. 218 was decided upon a distinction between the application of the Judiciary Act to suits against receivers in equity and to suits against trustees in bankruptcy. The *Riehle* case, as we read it, suggests no such distinction. The case had to do with the effect of a judgment, obtained in a state court subsequent to receivership, upon

a suit begun against the debtor prior to receivership. It was held that the statute enabling a bankruptcy court in some instances to stay proceedings begun against the bankrupt prior to adjudication, did not apply in cases of receiverships in equity. The question did not turn upon the construction of section 66 of the Judicial Code as applied to bankruptcy cases, but upon that of an entirely distinct statute.

Mr. Justice *Brandeis*, who wrote the opinion in the *Riehle* case, did not appear to be troubled by the doubts of the Circuit Court of Appeals. He later wrote the opinion in *Ex parte Baldwin*, 291 U. S. 610. This involved an action in a state court against trustees in bankruptcy. It was not suggested that the state court had no jurisdiction because section 66 did not apply in bankruptcy cases, though that would have been the easiest way to dispose of the case. The decision turned upon the point that the suit was aimed at determining the title of the trustee in bankruptcy, a question of which the bankruptcy court had sole jurisdiction even under section 66. While the Supreme Court has not distinctly held that this section applies to suits against trustees in bankruptcy, it has avoided saying the contrary, and seems fairly to have assumed its applicability for purposes other than mere argument.

Certain United States district courts and a state court have held that section 66 is applicable to suits against trustees in bankruptcy. *In re Smith*, 121 Fed. 1014; *In re James Butler Grocery Co.*, 12 Fed. Supp. 851 (decided in the Second Circuit since *Vass* v. *Co.*); *Stephens* v. *Walker*, 217 Ala. 466. The most recent case of the sort found in a district court is *Anderson* v. *Scandrett*, 19 Fed. Supp. 681, where there was a suit against the trustees in bankruptcy of a railroad for infringement of a patent in the unlicensed use of frogs. It was said that such a suit did not interfere with the operation of the railroad or with the ownership and possession of the property; nor did it hinder or delay reorganization under section 77 of the bankruptcy act, nor with the determination by the bankruptcy court of dischargeable claims.

Upon a view of all the authorities, we think that the defendants were properly sued in the state court provided the cause of action was based upon some act of theirs to which section 66 applies. Whether this was such an act will next be considered, and as to that two questions must be answered.

II. Under section 66, may the trustees be sued in a state court for acts of their predecessors in trust? The alleged act of negligence

was that of the temporary receivers. Three days after the accident the defendants were appointed trustees. The words "act or transaction of his in carrying on the business," do not limit the right to sue to cases where the cause of action arose from the conduct of the trustee himself or his agent. "His position is somewhat analogous to that of a corporation sole, with respect to which . . . actions will lie by and against the actual incumbents . . . for causes of action accruing under their predecessors in office . . . Actions against the receiver are in law actions against the receivership, . . . and his contracts, misfeasances, negligences and liabilities are official. . . . [So] the right given by the statute to sue for the acts and transactions of the receivership is unlimited. . . . The defence is frivolous." *McNulta* v. *Lochridge*, 141 U. S. 327.

III. Was the act upon which suit was based one "in carrying on the business connected with such property?"

At the date of the accident to the deceased, the manufacture of textiles had been abandoned. The hydro-electric plant of the bankrupt was generating current under a contract with the Public Service Company of New Hampshire. The temporary receivers had in their employ watchmen and others whose duty it was to keep the assets of the bankrupt intact. Certain of the real estate was being rented, and the receivers were collecting rents. The reservoir, where deceased came to his death through the alleged negligence of the receivers, "was being maintained for its usual purpose," the protection of the real estate in case of fire.

The claim is that the receivers were guilty of a tort in the management of the reservoir. Generally speaking, the receiver may be sued in any court of competent jurisdiction for his tort while acting as receiver (or the tort of his employe in the receivership). *The St. Nicholas,* 49 Fed. 671; *Central Trust &c. Co.* v. *Railway,* 59 Fed. 523; *Texas &c. Co.* v. *Cox,* 145 U. S. 593; *Berwind-White Co.* v. *Corporation,* 228 Fed. 726; *Atkinson* v. *Kreis,* 140 Ga. 52. This is true, even though the business carried on is the operation of a railroad and the negligent act in maintenance of a reservoir to supply locomotives and a repair shop is purely incidental to the business. The appointing court may in some cases control such actions as far as is necessary to ensure prompt equitable distribution of the receivership funds (*Smith* v. *Company,* 200 Fed. 647), but there was no occasion, and apparently no attempt, to do so in the case we are considering. The rule as to suits for torts applies equally where the alleged tort of the receiver is not an original one, but consists only of continuing an unlawful

or negligent condition that originated before the receivership. *Meyer v. Harris*, 61 N. J. L. 83; *Robinson v. Mills*, 25 Mont. 391. The seemingly contrary result in *Jones v. Schlapback*, 81 Fed. 274 may be explained upon the theory that the question involved was one of title to the receivership property. All cases involving the title to the receivership property, or its possession or control, are in the sole jurisdiction of the appointing court. *Ex parte Baldwin*, 291 U. S. 610.

It has been held that the making by the receiver of a contract for the storage of receivership property is not a transaction in carrying on business connected with such property. "His act related to the care and preservation of the property, but had no relation to any business carried on by him." *In re Kalb & Berger Mfg. Co.*, 165 Fed. 895, 897. This is the sole case relied upon by the defendants upon this question. Our comment is that the making of a contract of that sort is "business" of the receiver and that as it relates to the preservation of the property, it is directly "connected with such property." No other case has been found to support the *Kalb* case.

Usually the distinction made is this. A receiver can be sued in a state court without leave of the appointing court in any case which seeks to recover against the receiver for some act in the conduct of the receivership. But leave is required if the suit involves title to or possession of the property in the receiver's hands, its use, its control, or the liquidation and the distribution of the proceeds.

Thus, if there is no more than a holding of possession by the receiver, this is not an "act or transaction". *In re Tyler*, 149 U. S. 164. The statute applies only when the receiver is sued for some contract made by him or some wrong done. *J. I. Case Plow Works v. Fink*, 81 Fed. 529. In the case just cited the only object of the suit was to establish a right to property adverse to the receiver, and of course leave was required. And so a suit for damages for the receiver's detention of property may not be brought in the state court without leave. *Love v. Railroad*, 178 Fed. 507. The test suggested is whether the right to liquidate the claim is incompatible with the receiver's possession or the rights of the owners or creditors. *Malott v. Shimer*, 153 Ind. 35. Causes of action which directly affect the administration of the receivership cannot be sued in the state court without leave of the appointing court. *Dickinson v. Willis*, 239 Fed. 171; *American &c. Co. v. Company*, 10 Fed. Supp. 512 (affirmed in circuit court of appeals, 76 Fed. (2d), 1002; certiorari denied, 295 U. S. 760).

The intent of section 66 is that it shall apply only to acts of the

receiver himself, or such as may be imputed to him, after his custody has attached. It has nothing to do with actions involving title to the trust property. *Field* v. *Company*, 9 Fed. (2d), 213 (certiorari denied, 271 U. S. 676). And a mere failure of a receiver of a railroad to resume a service discontinued prior to the receivership is not his act, and a suit for the forfeiture of receivership assets for acts prior to his appointment may not be brought in a state court without leave. *Ex parte Baldwin*, 291 U. S. 610. Nor do garnishment proceedings against a receiver grow out of any act or transaction of the receiver. They interfere with the administration of the receivership. *In re Chakos*, 36 Fed. (2d), 776; *Republic &c. Co.* v. *Company*, 50 Fed. (2d), 639.

The history of the statute is consistent with this line of demarcation between suits directly interfering with the administration of the receivership and suits which are based upon acts of the receiver in the course of administration and which do not affect the title, possession, control, liquidation or distribution of the assets. The passage of the statute was the consequence of the decision in the case of *Barton* v. *Barbour*, 104 U. S. 126. The federal receiver of a railroad appointed in Virginia was sued for negligence in the District of Columbia. The plaintiff contended earnestly that the old equitable rule required leave only in cases which interfered with the jurisdiction of the appointing court, as a suit designed to affect the receiver's possession of property. The majority of the court, however, took the contrary view, reasoning that any suit upon a money demand might reduce the receivership property without regard to the rights of other creditors or the orders of the court which administers the property. Apparently they could not foresee that even though the judgment of the state court might be conclusive as to liability and damages, there could be no enforcement against the receivership property without leave of the appointing court, which would retain full control of the adjustment in equity of the various claims and of the time and manner of payment. *Riehle* v. *Margolies*, 279 U. S. 218, 223, 224.

Mr. Justice *Miller* dissented in the *Barton* case. He pointed out that the chancery rules invented by the courts had unfortunate results. The wrongs of a receiver were taken out of the common-law field where they belonged and reduced to mere proceedings in equity, wherein the claimants had to submit to trial before a master in chancery without jury, though the case be one of tort without a single element of equitable jurisdiction. He advocated the adoption

of the English rule: if the chancery court was of opinion that a plaintiff in a law court was improperly interfering with the functions of the receiver, prosecution of the suit might be restrained. Even in cases where the sole business of the receiver was to liquidate, the appointing court should exercise control only by injunction or proceedings for contempt. He rejected the notion that any court having jurisdiction of the parties and the subject-matter could properly deny a plaintiff his common-law rights by dismissing a suit.

Here was the issue strictly drawn. It is apparent that the Congress intended in 1887 to adhere to the ideas of Mr. Justice *Miller*. Wrongs of the receiver were to be cognizable by any court of competent jurisdiction, subject only to the general equity jurisdiction of the appointing court. The construction of the reserved equitable power, with very few exceptions, has been in accordance with the minority view expressed in the *Barton* case.

Broadly the general view is this: with respect to a suit in a state court for wrongs of the receiver, there will be no injunction by the appointing court unless the action threatens to interfere with the control of the functions of the receivership, which involves such matters as title, possession, means and methods of administration, liquidation, the establishment of relative equities and time and manner of distribution. *Texas &c. Co.* v. *Johnson*, 151 U. S. 81, 102, where it was said that since the property was no longer in the custody of the appointing court, there could be no interference with possession; *Gableman* v. *Railway*, 179 U. S. 335, 338, 339, stating that the saving clause was prompted by the principle that the receiver is not to be interfered with by a state court in the administration and disposal of the property, and that equities are to be adjusted by the appointing court, which must determine the time and manner of payment. To a similar effect are *Central Trust Co.* v. *Railway*, 41 Fed. 551; *Dillingham* v. *Hawk*, 60 Fed. 494, saying that the saving clause applies only to suits interfering with possession, adjustment of equities, distribution; *St. Louis &c. R. Co.* v. *Holbrook*, 73 Fed. 112, holding that all expenses of receivership adjudicated in the state court must be paid out of property sold by the receivers in bulk, where the decree ordering sale provided that the purchasers should pay all liabilities allowed by the receivership court, and that court had never allowed this judgment of the state court and no longer had control of the property or the receivers; *Willcox* v. *Jones*, 177 Fed. 870, 875, holding that by the saving clause "the courts of the United States are clothed with ample power, by injunction, to prevent judgment

creditors from harassing a receiver or interfering with the property in his possession"; *Manhattan Trust Co.* v. *Company*, 188 Fed. 1006, 1010, 1012, distinguishing between a liability incurred by a receiver while acting in his official capacity and liabilities originating otherwise, and suggesting that the clause applies only to suits interfering with possession; *Investment Registry Limited* v. *Company*, 204 Fed. 500, affirmed 225 Fed. 1022, upholding the right of the state court to adjudicate a liability incurred by the receiver, but reserving satisfaction to the decision of the appointing court, which may deny payment on the ground of inequitable conduct; *American &c. Co.* v. *Company*, 263 Fed. 237, 240, holding that the saving clause merely reserves "jurisdiction over the mode of enforcing collection of such claim . . . to properly protect and conserve the receivership property and to adjust the equities"; *American &c. Co.* v. *Company*, 278 Fed. 832, suggesting that the reserved power includes the right to enjoin collection of a judgment obtained by fraud in a state court; *Glickman* v. *Kirtland*, 254 N. Y. Supp. 470; *Atkinson* v. *Kreis*, 140 Ga. 52.

The facts now presented by this case do not disclose any situation which would have justified at any time the use of injunctive process by the bankruptcy court to restrain the prosecution of this suit. Moreover, there was no attempt to exercise the power of the bankruptcy court, had it existed. There is no *res* over which that court now has jurisdiction. The motion to dismiss was properly denied as far as questions of federal jurisdiction are concerned. Whether it should be dismissed for want of proper parties will depend upon what motion, if any, the defendants may make in the Superior Court and what further parties may be brought in upon an amendment by way of a bill in equity. The present order is

*Exception overruled.*

All concurred.